**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

TECHFIELDS PHARMA CO., LTD.,

        Plaintiff,

        v.

COVANCE, INC., et al.,

        Defendants.

Civil Action No. 16-1148 (MAS) (LHG)

**MEMORANDUM OPINION FILED UNDER TEMPORARY SEAL**

**SHIPP, District Judge**

    This matter comes before the Court on: (i) Defendant Covance, Inc.'s ("Covance") motion to dismiss Counts Two and Three of Plaintiff Techfields Pharma Co., Ltd.'s ("Techfields" or "Plaintiff") Amended Complaint (ECF No. 70);[1] and (ii) Defendant Fisher Clinical Services, Inc.'s ("Fisher") motion to dismiss Counts Two and Three of Plaintiff's Amended Complaint (ECF No. 77).[2] Plaintiff filed opposition (ECF Nos. 92, 93), and Defendants replied (ECF Nos. 98, 101). The Court has carefully considered the parties' submissions and held oral argument on April 9, 2018. For the reasons set forth below, Defendants' motions to dismiss are denied.

---

[1] The un-redacted moving brief is filed under seal at ECF No. 71.

[2] The un-redacted moving brief is filed under seal at ECF No. 78.

I. <u>Background</u>[3]

Plaintiff developed prodrug X0002, which was intended to treat mild to moderate osteoarthritis ("Active Drug"). (Am. Compl. ¶ 1, ECF No. 67.) Plaintiff retained Covance to manage Phase II of the Clinical Trial for the Active Drug. (*Id.* ¶ 3.) Plaintiff and Covance entered into a Clinical Services Agreement ("CSA") regarding the study. Under the terms of the CSA, "Covance agreed to 'be responsible for subcontractors qualified and contracted by Covance. . . .'" (*Id.* ¶¶ 18, 26.)

Covance then entered into an agreement with Fisher (the "Fisher Agreement") whereby Fisher agreed to provide labels, packaging, distribution, returns, and accountability and destruction services in support of Covance's contractual responsibilities to Plaintiff. (*Id.* ¶¶ 28-29.) Pursuant to a second agreement (the "Fisher Comparator Product Agreement"), Fisher also agreed to source comparator products and repackage those products for use in the Phase II Clinical Trial. (*Id.* ¶ 30.)

Plaintiff's drug manufacturer, Frontage Laboratories Co., Ltd. ("Frontage"), shipped 2800 kits of the Active Drug and 2000 kits of the placebo drug to Fisher. (*Id.* ¶¶ 31-32.) Each kit was clearly labeled as containing either the Active Drug or the placebo. (*Id.* ¶ 32.) On April 29, 2014, the shipment arrived at Fisher's facility. (*Id.* ¶ 33.) Fisher's Receiving Reports and Receipt Inspection Reports did not indicate any problem with the shipment and no issues were reported to Techfields. (*Id.* ¶¶ 33-35.)

About a month after the shipment was delivered, on May 20, 2014, Fisher generated a "Deviation Report," which Covance approved on May 30, 2014. (*Id.* ¶ 46.) The Deviation Report "noted that . . . during the course of segregation and labeling of the kits and components, Fisher

---

[3] For the purpose of these motions, the Court accepts the facts alleged in the Amended Complaint as true. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

2

employees improperly sorted the Active Drug kits from the placebo kits." (*Id.*) It is unclear exactly when Techfields first became aware of this Deviation Report, but neither Defendant reported any problem with the shipment to Techfields during the time that Fisher handled the assembly, labeling, packaging, and distribution of the kits. (*See, e.g., id.* ¶¶ 33, 34, 46, 82-83, 144-45.)

Sometime around October 30, 2014, a project manager from Covance told Dr. Yu, Techfield's President, that Fisher reported a shortage of materials and asked him to supply more kits to Fisher. (*Id.* ¶ 87.) No one explained how they ran out of kits (*id.* ¶ 89), but Dr. Yu relied on the statement and shipped additional kits (*id.* ¶ 147). The packing slip and receiving reports now demonstrate that there was no shortage and Techfields alleges this was an attempt to cover-up "Defendants' breach of contract, negligence and other failures." (*Id.* ¶¶ 87-88.)

In July 2015, the preliminary data from the Phase II trial was provided to Techfields. (*Id.* ¶ 36.) The results revealed an "unprecedented apparent placebo effect" and suggested a mix-up between the Active Drug and placebos. (*Id.* ¶¶ 37-40.) Dr. Yu suspected that a mix up must have occurred during the labeling and/or distribution to the clinical sites. (*Id.* ¶ 41.) Dr. Yu reached out to Covance, which contacted Fisher and inquired about the issue. (*Id.* ¶¶ 42-43.) On July 31, 2015, Fisher's Project Manager, Mr. Gerhardt, sent an e-mail message to Covance, which was in turn provided to Techfields, and claimed that the shipment "was done unprofessionally," the total units received was "not even close to the quantity declared on the packing list," "operators found bottles that were completely empty," and "some bottles may have had incorrect labels." (*Id.* ¶ 45.)

On August 4, 2015, Techfields discovered a discrepancy between the number of kits that Frontage provided to Fisher and the number of kits that Fisher reportedly assembled. (*Id.* ¶ 47.) On August 5, 2015, Covance officially notified Fisher that Techfields requested a review of drug accountability. (*Id.* ¶ 48.) On August 10 and 11, 2015, Dr. Yu and Tricia Childers, Covance's

3

Project Manager, met with Fisher representatives at Fisher's facility to address Techfields' concerns. (*Id.* ¶ 49.) Dr. Yu toured Fisher's facility and tested the contents of certain bottles, four of which were identified as potentially mislabeled. (*Id.* ¶ 50.) Covance then filed a formal complaint with Fisher and Fisher initiated its internal complaint investigation. (*Id.* ¶ 51) In a subsequent meeting, on September 8, 2015, Covance and Fisher agreed to send the used bottles and associated kits to Frontage for analysis. (*Id.* ¶ 52.) The next week, on September 16, 2015, Covance shipped all of the bottles in its possession to Frontage. (*Id.* ¶¶ 69, 102.) Fisher waited two weeks and shipped its bottles on September 23, 2015. (*Id.* ¶ 70.) Fisher shipped fewer bottles than should have been in its possession and many of the bottles in Fisher's possession are missing. (*Id.* ¶¶ 71, 102.) After the bottles arrived, Frontage tested the bottles and found several problems, including eighteen bottles from Fisher that were mislabeled and contained a substance different from what should have been inside. (*Id.* ¶ 73.) In addition, some bottles had the incorrect cap (or no cap at all), some bottles were broken or defaced, some labels were destroyed, and some of the returned used bottles were marked as used but the substance within was not reconstituted or contained more substance than they should have, given the substance's evaporation rate. (*Id.*)

On September 14, 2015, after Fisher agreed to return the bottles but before it actually shipped them, Fisher provided Covance with a copy of its internal Complaint Report, which was in turn shared with Techfields. (*Id.* ¶ 54.) Fisher's Complaint Report "admitted that it knew there were several deviations and problems" identified during the labeling and packaging process but concluded that it appropriately fixed all problems and "there is no indication that Active and Placebo material was mixed or that any material was mislabeled at the time of receipt." (*Id.* ¶¶ 55, 56.) On September 30, 2015, Covance provided Techfields with a copy of its "Directed Audit"

summary. (*Id.* ¶ 64.) Covance "concluded that Fisher had correctly labeled the bottles" (*id.* ¶ 53) and Fisher's services appeared to be appropriate (*id.* ¶ 65).

Techfields points to several items in Fisher's Complaint Report that Techfields believes supports its position, including "admissions" and "acknowledgments" that contradict the ultimate finding that "there is no indication that Placebo and Active material was mixed . . . ." (*Id.* ¶¶ 56-62.) According to Techfields, Covance noted that Fisher failed to retain certain records including photographs that were created when the shipment arrived at Fisher's facility (*id.* ¶ 66), failed to "properly reconcile the production" after it had purportedly rejected units, and failed to explain the reasons for rejection of certain units (*id.* ¶ 67). Techfields alleges that Fisher did not take appropriate action to sort the kits from the outset and the plan that Covance designed did not have such a requirement (*id.* ¶¶ 79, 81), Covance knew of the issue because Fisher reported the problem to Covance (*id.* ¶ 81), and Covance only directed Fisher to verify the contents of the kits after Fisher affixed its own label over the pre-existing label on each of the bottles (*id.*).

Plaintiff alleges that Fisher "knew or should have known that it improperly labeled the individual components of the kits." (*Id.* ¶¶ 4, 81.) Although Fisher reported the issue to Covance before the kits were distributed to the clinical sites, Defendants did not inform Techfields and, instead, allowed the Phase II Clinical Trial to proceed. (*Id.* ¶¶ 4-5.)

Plaintiff alleges that as a result of Defendants' conduct, "Techfields was unable to immediately discover that the clinical trial was not reliable and[,] as a result[,] was delayed in securing FDA approval for [the Active Drug] and bringing it to market." (*Id.* ¶ 103.) Before Plaintiff became aware of the alleged misconduct, it paid Covance approximately $4.2 million dollars. (*Id.* ¶ 104.)

On February 29, 2016, Plaintiff filed a Complaint, alleging: (1) breach of contract; (2) breach of an implied covenant of good faith and fair dealing; and (3) fraud. (Compl., ECF No. 1.) Covance moved to dismiss the Complaint (ECF No. 15), and Fisher moved to dismiss Count II (breach of the implied covenant of good faith and fair dealing) and Count III (fraud) (ECF No. 21). The Court dismissed Count II and Count III, without prejudice, and provided Plaintiff an opportunity to amend the Complaint. (ECF No. 63.) Plaintiff filed an Amended Complaint on August 25, 2017. (ECF No. 67.) Both Defendants again move to dismiss Count II and Count III of the Amended Complaint.

## II.   Legal Standard

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

A district court is to conduct a three-part analysis when considering a Rule 12(b)(6) motion to dismiss. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must "review[] the complaint to strike conclusory allegations." *Id.* The court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-

6

unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

Where a plaintiff pleads fraud, however, the plaintiff "must meet a heightened pleading standard under Federal Rule of Civil Procedure 9(b)." *Zuniga v. Am. Home Mortg.*, No. 14-2973, 2016 WL 6647932, at *2 (D.N.J. Nov. 8, 2016). To satisfy Rule 9(b), a plaintiff must plead "the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citation omitted). To meet this requirement, the plaintiff must plead or allege the "date, time[,] and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.*

### III. Discussion

Both Defendants move to dismiss Count II and Count III of the Amended Complaint. Defendants argue that: (i) the claims are not sufficiently pled (Covance's Moving Br. 18-28, ECF No. 71; Fisher's Moving Br. 11-15, 25-34, ECF No. 78); (ii) the economic loss doctrine bars both Counts (Covance's Moving Br. 12-18; Fisher's Moving Br. 19-25); and (iii) consequential and punitive damages are expressly disclaimed by the CSA and, therefore, must be stricken from the Complaint. (Covance's Moving Br. 34-36; Fisher's Moving Br. 35-40.) The Court discusses each of Defendants' contentions in turn.

7

A.  **Pleading Standards**

The Court will first address the sufficiency of the pleadings for Count II and Count III of the Amended Complaint. For the reasons discussed below, the Court finds that Plaintiffs have adequately pled both claims and denies the motions to dismiss on this ground.

1.  Breach of the Implied Covenant of Good Faith and Fair Dealing

The breach of the implied covenant of good faith and fair dealing claim is subject to the notice pleading requirements of Federal Rule of Civil Procedure 8(a). In reviewing a motion to dismiss, the Court considers "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" *Twombly*, 550 U.S. at 583 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); *see also Iqbal*, 556 U.S. at 684; *Fowler*, 578 F.3d at 210. To state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege: (1) the defendant's conduct denied plaintiff the benefit of a bargain originally intended by the parties; and (2) the defendant acted with bad motive or intention. *Dando v. Bimbo Food Bakeries Distrib., LLC*, No. 14-2956, 2017 WL 1362022, at *4 (D.N.J. Apr. 10, 2017); *Zacks v. NetJets, Inc.*, No. 11-2537, 2011 WL 4387147, at *4 (D.N.J. Sept. 20, 2011); *Cryofab, Inc. v. Precision Med., Inc.*, 2008 WL 2705007, at *3 (D.N.J. July 3, 2008); *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 531 (D.N.J. 2008); *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 251 (2001)).

Defendants assert that the breach of the implied covenant claim is entirely duplicative of Plaintiff's breach of contract claim (Covance's Moving Br. 12-18; Fisher's Moving Br. 12-15) and that Plaintiff has not sufficiently alleged that Defendants acted with "bad motive" as required to state a claim for breach of the implied covenant. (Covance's Moving Br. 28-34; Fisher's Moving Br. 15-18.) Plaintiff responds that the allegations underlying the breach of the implied covenant

8

claim are distinct from the contract claim (Pl.'s Opp'n to Covance 27-29, ECF No. 92; Pl.'s Opp'n to Fisher 10-14, ECF No. 93), and, in any event, the implied covenant claim is clearly plead in the alternative and should survive a motion to dismiss. (Pl.'s Opp'n to Covance 29-30; Pl.'s Opp'n to Fisher 14-15.)

The Court finds that the Count is adequately pled under Rule 8(a). The allegations relevant to the breach of contract claim are distinct from the allegations related to the good faith and fair dealing claim (*compare* Am. Compl. ¶ 116 *with* ¶ 128; ¶ 110 with ¶ 131), and the Amended Complaint adequately pleads a bad motive (*id.* ¶¶ 9, 10, 91, 128, 131-33, 136, 148). Further, even if the good faith and fair dealing claim was entirely duplicative of the contract claim, Plaintiffs have pled their claims in the alternative, which is permissible under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8(d). It is conceivable that Plaintiff might not ultimately establish the breach of an express contractual provision, but may nevertheless establish a breach of the implied covenant of good faith and fair dealing. The Court, therefore, denies the motions on this ground.

    2.    <u>Fraud</u>

To properly plead a claim for fraud, the plaintiff must meet the heightened pleading standard under Federal Rule of Civil Procedure 9(b). *Zuniga*, 2016 WL 6647932, at *2. "A plaintiff alleging fraud must therefore support its allegations 'with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue.'" *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)).

To assert a fraud claim under New Jersey law, Plaintiff must allege: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Va. Sur. Co. v. Macedo*, No. 08-5586, 2011 WL 1769858, at *17 (D.N.J. May 6, 2011) (quoting *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 260 (N.J. 2005)).

Defendants argue that the fraud claim is not pled with particularity as required by Rule 9(b). (Covance's Moving Br. 18-28; Fisher's Moving Br. 25-32.) In response, Plaintiff points to the allegations that support each aspect of the fraud claim. (Pl.'s Opp'n to Covance 19-26; Pl.'s Opp'n to Fisher 18-27.) Upon review of the pleadings, the Court finds that Plaintiff has sufficiently pled a plausible fraud claim against each Defendant. The Court, therefore, denies the motions on this ground.

### B. Potential Application of the Economic Loss Doctrine to Counts II and III

Next, the Court considers whether the economic loss doctrine bars either the covenant of good faith and fair dealing claim or the fraud claim, as Defendants contend. (Covance's Moving Br. 12-18; Fisher's Moving Br. 19-25.) "The economic loss doctrine 'prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract.'" *Montanez v. HSBC Mortg. Corp. (USA)*, 876 F. Supp. 2d 504, 519 (E.D. Pa. 2012) (quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995)). The doctrine serves to "maintain the 'critical' distinctions between tort and contract actions." *G&F Graphic Servs. v. Graphic Innovators, Inc.*, 18 F. Supp. 3d 583, 588 (D.N.J. 2014) (quoting *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 310-14 (N.J. 2002)). A dispute that arises out of and relates to a contract and its breach should be resolved pursuant to contract law rather than tort

10

law. *See Wasserstein v. Kovatch*, 261 N.J. Super. 277, 286 (App. Div. 1993). "Essentially, the economic loss doctrine functions to eliminate recovery on 'a contract claim in tort claim clothing.'" *G&F Graphic Servs.*, 18 F. Supp. 3d at 589 (quoting *SRC Constr. Corp. v. Atl. City Hous. Auth.*, 935 F. Supp. 2d 796, 801 (D.N.J. 2013)).

1. Breach of the Implied Covenant of Good Faith and Fair Dealing

In its prior decision, the Court found that the economic loss doctrine barred the breach of the covenant of good faith and fair dealing claim because the doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." (Aug. 9, 2017 Mem. Op. 9, ECF No. 62) (internal citations omitted). The parties extensively briefed this issue in connection with the current motions and discussed their positions on the record during oral argument. The parties concede that there is a split in this district regarding whether a breach of the implied covenant of good faith and fair dealing claim sounds in tort or in contract. In light of the comprehensive briefing and as this issue appears to be unresolved, the Court now takes the opportunity to conduct an analysis.[4]

In New Jersey, every contract contains an implied covenant of good faith and fair dealing. *See Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 243 (N.J. 2001) (citing *Sons of Thunder v. Borden, Inc.*, 148 N.J. 396, 420 (N.J. 1997)). The term implied into the contract is that "'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Ass'n Grp. Life, Inc. v. Catholic War Veterans*, 61 N.J. 150, 153 (N.J. 1972) (quoting 5 *Williston on Contracts* § 670, 159-60 (3d ed. 1961)). "[I]mplied

---

[4] The Court is not foreclosed from revisiting this issue. *See Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997); *DeFranco v. Wolfe*, 387 F. App'x 147, 156 (3d Cir. 2010) (quoting *Runyon*, 130 F.3d at 573) ("In order to revisit a prior decision, the Court must explain on the record the reasoning behind its decision to reconsider the prior ruling, and it must take appropriate steps so that the parties are not prejudiced by reliance on the prior ruling.").

11

covenants and terms of a contract are as effective components of the agreement as those expressed." *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 168 N.J. 255, 277 (N.J. 2001) (quoting *Aronsohn v. Mandara*, 98 N.J. 92, 100 (N.J. 1984)).

Within the District of New Jersey, some courts find that the economic loss doctrine bars an implied covenant claim, relying on an assumption that it is a tort claim. *See, e.g., Am. Fin. Res., Inc. v. Countrywide Home Loans*, No. 12-7141, 2013 WL 6816394, at *7 (D.N.J. Dec. 23, 2013) (analyzing whether the claim was barred by the economic loss doctrine assuming that an implied covenant claim is a tort claim); *Trico Equip., Inc. v. Manor*, No. 08-5561, 2011 WL 705703, at *6 (Feb. 22, 2011) (same). Other courts find a breach of an implied covenant to be a contractual claim. *See, e.g., Dando*, 2017 WL 1362022, at *3 ("The [economic loss] doctrine applies only to tort claims . . . . [B]reach of the covenant of good faith and fair dealing, sounds in contract . . . Thus, as a matter of law, [breach of the covenant of good faith and fair dealing] cannot be barred by the economic loss doctrine."); *Fregara v. Jet Aviation Bus. Jets*, 764 F. Supp. 940, 954 (D.N.J. 1991) ("Plaintiff's claim that defendant breached its covenant of good faith and fair dealing is not a tort claim, but rather contractual in nature.").

After careful consideration of these cases, this Court finds that the breach of implied covenant claim, as set forth in this Complaint, sounds in contract.[5] Regardless of whether a contract term is expressly included by the parties or implied by law, it is still a term of the contract.

---

[5] The Court notes that it is not making any determination regarding available damages at this time. At oral argument, counsel for Covance argued that if the Court were to find that the breach of the implied covenant is a contract claim, it should also find that the Count is limited by the exculpatory clause of the contract. As discussed below, the Court finds it premature to address the enforceability of the clause at this stage of the proceedings; therefore, the Court makes no findings as to the enforceability of the clause or its applicability to the good faith and fair dealing claim.

As such, it logically follows that the breach of an implied covenant amounts to a breach of the contract in which it was implied.

As the Court finds that Plaintiff's breach of the implied covenant claim sounds in contract—not tort—the Court need not engage in a further analysis of the economic loss doctrine's application to this claim. Defendants' motions on this ground, therefore, are denied.

    2.    Fraud

Next, the Court considers whether the fraud claims are barred by the economic loss doctrine. As an initial matter, the Court notes that the exact contours of the economic loss doctrine and its application to bar a fraud claim are unsettled under New Jersey law. *Spectraserv, Inc. v. Middlesex Cnty. Utils. Auth.*, No. L-2577-07, 2013 N.J. Super. Unpub. LEXIS 2173, at *46-47 ("The Court acknowledges the lingering questions regarding the applicability of the economic loss doctrine to [] torts such as fraud."). There is "no New Jersey Supreme court case [that] holds a fraud claim cannot be based on the same facts as an underlying contract claim." *Touristic Enters. Co. v. Trane, Inc.*, 2009 WL 3818087, at *2 (citing *Gleason v. Norwest Mort., Inc.*, 243 F.3d 130, 144 (3d Cir. 2001) (analyzing the state of the economic loss doctrine in New Jersey)); *see also Q Capital v. Corp. v. Willmington Trust Co.*, 2007 WL 93231, at *3 (D.N.J. Jan. 12, 2007) ("[W]hether [plaintiff] can seek to recover damages for breach of contract and fraud in the same action based on the same conduct arising from the execution of a business agreement is unsettled in this State."); *Spectraserv*, 2013 N.J. Super. Unpub. LEXIS 2173, at *46-47 ("Indeed, no New Jersey court has explicitly considered whether fraud claims are barred by the economic loss doctrine.").

Courts that address the question generally find that any fraud *extrinsic* to a contract is not barred by the doctrine. *See CapitalPlus Equity, LLC v. Prismatic Dev. Corp.*, No. 7-321, 2008

WL 2783339, at *6 (D.N.J. July 16, 2008) (noting that while the doctrine is unsettled in New Jersey, courts in this District look to whether the fraud is intrinsic or extrinsic to the contract). Here, the parties dispute whether the alleged fraud is extrinsic or intrinsic to the contract, and accordingly, whether the claim is barred by the economic loss doctrine. (*See* Covance's Moving Br. 12-18; Fisher's Moving Br. 19-25; Pl.'s Opp'n to Covance 12-17; Pl.'s Opp'n to Fisher 16-18.)

Plaintiff sets forth two theories of fraud: fraudulent concealment and affirmative misrepresentations. (Pl.'s Opp'n to Covance 19; Pl.'s Opp'n to Fisher 21.) Plaintiff argues that Covance had a statutory duty to notify both Techfields and the FDA of deviations from the protocol. (Pl.'s Opp'n to Covance 14.) In addition, Plaintiff argues that Covance owed Plaintiff a duty of disclosure under New Jersey common law (*id.* at 16-17) and that Fisher had a common law duty to disclose its failures as well (Pl.'s Opp'n to Fisher 16-18).[6] As to Defendants' affirmative misrepresentations, Plaintiff argues that it relied on misrepresentations that: (1) there was a drug shortage; (2) there was no indication that the placebo and Active Drug were ever mixed up, and (3) any deviations found were corrected. (Pl.'s Opp'n to Covance 19-26; Pl.'s Opp'n to Fisher 21-27.) Plaintiff alleges that it relied on these representations in shipping additional drugs and continuing the Phase II study. (*Id.*) Defendants dispute Plaintiff's claims of misrepresentation and reliance. (Covance Moving Br. 20-23; Fisher Moving Br. 29-31.)

Courts have recognized that the line between intrinsic and extrinsic claims is often "fuzzy." *Touristic Enters. Co.*, 2009 WL 3818087, at *3. Based on the facts pled in the Amended

---

[6] In a footnote in its brief, Plaintiff also argues that Fisher owes the same statutory duty as Covance. (Pl.'s Opp'n to Fisher Mot. 18 n.2.) In response, Fisher argues that this allegation is not contained in the Amended Complaint. (Fisher Reply Br. 7 n.3.) The Court has reviewed the Amended Complaint and agrees. The Court, therefore, will not consider this argument.

Complaint, the Court finds that the determination of whether Plaintiff's fraud claims are ultimately intrinsic or extrinsic is more appropriate for consideration at a later stage of the proceedings. Here, for purposes of pleading and these motions to dismiss only, the Court finds that Plaintiff has sufficiently pled a claim extrinsic to the contract. The Court, therefore, will consider the economic loss doctrine at the summary judgment stage on a full discovery record. *See Sahoury v. Meredith Corp.*, No. 11-5180, 2012 WL 3185964, at *8 (Aug. 2, 2012) ("The economic loss doctrine, if applicable here, would bar *recovery* where tort and fraud claims arise from the same facts as a breach of contract claim. It does not bar a plaintiff from pleading such claims. . . . The fact that defendants may have a defense to certain claims does not weigh on whether those claims have been sufficiently pleaded.").

Accordingly, the Court denies the motions on this ground, without prejudice.

C. **Damages**

Finally, Defendants move to dismiss Plaintiff's request for damages in excess of the contract's limitation of liability clause. (Covance's Moving Br. 34-37; Fisher's Moving Br. 35-40.) Techfields pled in the Amended Complaint that the contract between the parties is valid, except for the limitation of liability clause. (Am. Compl. ¶¶ 18, 28, 108, 115, 124.) Techfields argues that the limitation of liability clause is void because of intentional wrongdoing on the part of Defendants that renders the exculpatory clause unenforceable under New Jersey law. (Pl.'s Opp'n to Covance 7-10; Pl.'s Opp'n to Fisher 7-10.) Plaintiff argues that the validity of the limitation of liability clause is fact intensive and should not be decided until after discovery. (*Id.* at 8-9.) Plaintiff cites several cases that hold such an analysis is more appropriate at the summary judgment stage. (*Id.* at 9.) The Court agrees. "[T]he unconscionability inquiry is fact-intensive and therefore more appropriately explored at summary judgment." *G&F Graphic Servs.*, 18 F. Supp. 3d at 594.

Accordingly, Defendants' motions on this ground are denied, without prejudice.

## IV. Conclusion

For the reasons set forth above, Defendants Covance and Fisher Clinical Services' motions to dismiss are denied. An order consistent with this Memorandum Opinion will be entered by the Court.

s/Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

**Dated:** April 30, 2018